**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| F.G. BUDNICK, a married man and TEMPO, INC., a Michigan corporation,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>TOWN OF CAREFREE; et al.,<br><br>　　　　Defendants.<br>_____ | No. CIV 04-1420-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 18] and Motion to Strike Affidavit [Doc. No. 31]. On February 23, 2006, Plaintiffs also filed a Motion to Amend and Correct Complaint [Doc. No. 44]. After considering the arguments raised in the parties' briefs and asserted at oral argument, the Court issues the following Memorandum of Decision and Order.

**BACKGROUND**

On August 27, 2003, F.G. Budnick ("Budnick") and Tempo, Inc. ("Tempo" together with Budnick, "Plaintiffs") filed an application for Site Plan Approval and Special Use Permit with the Town of Carefree ("Carefree") to build the Residences at Carefree ("RAC").[1] Plaintiffs proposed to build the RAC on the following zoning districts: R1-10 (detached single family), R-3 (multiple family) and R1-35 (detached single family) in an

---

[1] Plaintiffs concede that the proposed plan does not comply with the applicable zoning ordinances.

Case 2:04-cv-01420-SMM   Document 46   Filed 03/31/06   Page 2 of 20

area where the surrounding properties are low density single family residences, residential neighborhoods and a small vacant C-3 (commercial) lot across the street.

In their Special Use Permit Narrative Report, Plaintiffs described the RAC as a "luxurious, age restricted senior retirement residential community" consisting "of upscale apartments (83), exclusive casitas (60) and opulent single family homes (18), primarily serving active and independent discerning senior populace." The Narrative Report also stated that the RAC would include 24 assisted living suites and 24 skilled nursing rooms and that some residents would be provided in home health care and assisted living care as necessary. A closer examination of the Record, however, reveals that only 10 units would be utilized for health care or nursing services (4 units for skilled nursing with six beds per unit and 6 units for assisted care with four beds per unit). In describing the ancillary nursing care facility, Plaintiffs also stated that the RAC will have "a small skilled nursing component consisting of 24 beds, 4 of which will be held in reserve for temporary acute needs."

The Record also demonstrates that the RAC as proposed, would include 44,500 square feet of amenities including a kitchen, two dining areas, salon, library, café, two pools and other recreation areas. In a letter dated November 26, 2003, Plaintiffs informed Carefree that "entry [will be] restricted to healthy, active independent seniors." Plaintiff Budnick also informed the Council that "[the RAC] would not be a nursing home but would be independent living...." Moreover, the Record establishes that potential residents would be required to take a physical prior to entry into the RAC.

On October 13, 2003, a public hearing was held on Plaintiffs' application for a Special Use Permit by the Carefree Planning and Zoning Commission (the "Commission"). The Commission voted four to one to deny the Special Use Permit with another member abstaining.

On December 2, 2003, the Carefree Town Council (the "Council") held a public hearing on Plaintiffs' Application for a Special Use Permit. At the conclusion of the hearing, the Council voted four to three to deny the Special Use Permit based on their conclusion that Plaintiffs had not met their burden to show that the safety, health and welfare of Carefree

would be served by allowing Plaintiffs to build the RAC, which violated the existing residential zoning ordinances due to the project's height, attached dwellings and commercial nature.

On December 30, 2003, after both the Commission and Council had reviewed and denied Plaintiffs' application for a Special Use Permit, Plaintiffs sent a letter to the Mayor of Carefree, Edward Morgan (the "Mayor"), requesting, for the first time, a reasonable accommodation under the Fair Housing Act, 42 U.S.C. § 3601 ("FHA"). On January 29, 2004, the Mayor, other Carefree officials, and interested neighbors, now aware that Plaintiffs were requesting an accommodation under the FHA, met with Plaintiffs and discussed possible modifications that would be necessary to accommodate any potential disabled individuals. An agreement was not reached.

In a letter (agreeing to the accommodation meeting) dated January 21, 2004, Defendants reference the possibility of reconsideration of Plaintiffs' application if progress was made during the negotiations. The Record, however, is devoid of any evidence that Plaintiffs requested the Commission or the Council to formally reconsider their decisions denying the Special Use Permit in light of Plaintiffs' belated request for an accommodation under the FHA. Instead, Plaintiffs filed a Complaint on July 12, 2004, seeking developers fees and injunctive relief and asserting the following claims: 1) Count I: Defendants are violating Plaintiffs' rights under the FHA; 2) Count II: Defendant Carefree is violating Plaintiffs' rights under the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq., ("ADA"); 3) Count III: Defendants, acting under color of law, have violated Plaintiffs' civil rights under 42 U.S.C. § 1983 ("§ 1983"); 4) Count IV: Defendant Carefree is violating Plaintiffs' rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794, (the "Rehabilitation Act") and 5) Count V: Defendants have violated Plaintiffs' equal protection and due process rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The Court will address Plaintiffs' Motion to Amend and Correct the Complaint [Doc. No. 44] before addressing Defendants' Motion for Summary Judgment and Motion to Strike Affidavit.

## I. MOTION TO AMEND

### STANDARD OF REVIEW

Leave to amend shall be freely given when justice so requires; however, the decision to grant or deny a motion to amend is within the sound discretion of the trial court. Fed. R. Civ.P. 15(a); Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). Courts frequently examine five factors in assessing a motion for leave to amend: 1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility of amendment and 5) whether the plaintiff has previously amended his complaint. Id. "These factors, however, are not given equal weight." Bonin v. Caldron, 59 F.3d 815, 845 (9th Cir. 1995).

### DISCUSSION

As a preliminary matter, the Court notes that Plaintiffs have failed to comply with LRCiv 15.1(a)(1) which requires a party moving for leave to amend to attach a copy of the proposed amended pleading to the motion demonstrating the differences between the amended and original pleading. Although this procedural deficiency justifies denying Plaintiffs' Motion, the Court also finds that the Motion is futile. See Bonin, 59 F.3d at 845 ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.")

In their Motion, Plaintiffs argue that the Complaint should be amended to add "new" facts from the zoning ordinance and the May 28, 2005 deposition of Gary Neiss. The Court finds that Plaintiffs were aware of these facts by the end of July 2005 at the latest.[2] Accordingly, the Court finds that Plaintiffs have not discovered "new" facts. Rather, Plaintiffs are attempting to re-fashion existing and well known facts based on an unpublished decision from an Arizona Superior Court.[3] Relying on GP Properties, Plaintiffs seek to amend their Complaint to "allege that Defendants' failure to approve the RAC application, which complied with standards for approval set forth in the Special Use

---

[2] Plaintiffs cite to the Neiss Deposition in their Statement of Facts filed on July 22, 2005, and Defendants attached the ordinance to their Statement of Facts filed on July 10, 2005.

[3] Plaintiffs cite to GP Properties Carefree Cave Creek L.L.C. v. Town of Carefree, et al., CV2004-022500 ("GP Properties").

- 4 -

1 Regulations, constitute [sic] another violation of due process." (Pls.' Mot. to Amend, p. 6).

2 The Court, however, finds that Plaintiffs' attempt to rely on an unpublished Arizona 3 Superior Court decision to re-fashion facts that Plaintiffs have known since at least July 4 2005 is improper.  See Ninth Circuit Rule 36-3(a)-(b); Schmier v. U.S. Court of Appeals for 5 Ninth Circuit, 279 F.3d 817, 819 (9th Cir. 2002) ("Circuit Rule 36-3 essentially states that 6 neither parties nor courts in the Ninth Circuit may cite to an unpublished disposition as 7 precedent."). Accordingly, Plaintiffs' Motion to Amend will be denied for failure to comply 8 with LRCiv 15(a)(1) and because the amendment would be futile.

## II. MOTION FOR SUMMARY JUDGMENT

### STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 317. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that

- 5 -

there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

## DISCUSSION

**A. FHA Claim**

To establish a violation under the FHA, Plaintiffs must prove either: 1) intentional discrimination (disparate treatment); 2) disparate impact or 3) failure to make reasonable accommodations. Gamble v. City of Escondido, 104 F.3d 300, 305-07 (9th Cir. 1997).

*a. Intentional Discrimination/Disparate Treatment*

The prima facie elements of a disparate treatment claim are: 1) plaintiff is a member of a protected class; 2) plaintiff applied for a conditional use permit and was qualified to receive it; 3) the conditional use permit was denied despite plaintiff being qualified; and 4) defendant approved a conditional use permit for a similarly situated party during a period relatively near the time plaintiff was denied its conditional use permit. Id. at 305. The Court will address these elements in order.

Plaintiffs contend that the Record before this Court contains evidence that disabled individuals will inhabit the RAC. Under 42 U.S.C. § 3602(d)(1),(2) and (3), a disability includes: "a physical or mental impairment which substantially limits one or more major life activities; a record of such impairment; or being regarded as having such an impairment." While the Record establishes Plaintiffs presented the Commission and Council with evidence that nursing and healthcare services would be available to some of the potential RAC residents, it also clearly shows that Plaintiffs did not request an accommodation under the FHA until after both entities had denied their application. In fact, Plaintiffs' application presented the RAC as a housing community (with available healthcare services) for active and independent seniors. Thus, the Court finds that the Commission and Council were not aware of Plaintiffs' request for an accommodation under the FHA when they denied Plaintiffs' application for a Special Use Permit.

While Plaintiffs concede that the RAC's potential residents would be required to pass

- 6 -

1  a physical and would have to be capable of independent living upon entry into the RAC, they
2  also claim that the RAC would house disabled individuals due to the advanced age of the
3  potential residents. Plaintiffs have also produced evidence that the RAC would provide
4  healthcare and nursing services to at least some potential residents and that the RAC could
5  qualify as a Continuing Care Retirement Community. Because this Court is required to draw
6  all reasonable inferences in favor of Plaintiffs and view the Record in the light most favorable
7  to Plaintiffs, the Court finds that Plaintiffs have presented sufficient evidence to create an issue
8  of fact as to the first element of a prima facie claim for disparate treatment.

9  The Court also finds that (1) there is no evidence indicating Plaintiffs were not qualified
10 applicants for a Special Use Permit, (2) Plaintiffs did in fact apply for a Special Use Permit and
11 (3) Plaintiffs' application for a Special Use Permit was denied. Thus, the Court finds that
12 Plaintiffs have produced evidence indicating that they meet the first three required elements of
13 a disparate treatment claim.

14 To establish a prima facie claim for disparate treatment, however, Plaintiffs must also
15 establish that Defendants approved a conditional use permit for a similarly situated party during
16 a relatively close temporal period to the time Plaintiffs' permit was denied. Plaintiffs contend
17 that the Record is replete with examples of Carefree granting Special Use Permits to other
18 similarly situated individuals; however, a closer examination of the Record demonstrates that
19 these cases have distinguishable characteristics including different zoning grades (Carefree
20 Resort was zoned R-5, Carefree Villas zoned R-3 & R1-18 with no commercial uses[4] ), creation
21 before the town of Carefree existed (golf course expansion, condos, hangar and theater), or
22 contemplation in the general plan (three churches).

23 While Plaintiffs have presented evidence that commercial services are provided by the
24 Carefree Villas, Plaintiffs have failed to produce evidence suggesting that the Special Use
25 Permits for Carefree Villas or any of the other allegedly similar projects occurred in close

---

[4] Defendants contend the Carefree Villas received a special use permit for a one foot height variance.

- 7 -

proximity to the denial of Plaintiffs' application. See Gamble, 104 F.3d at 305 (finding that mere allegations of other large structures in the vicinity are insufficient where neither the complaint nor the record "...informs [the court] of the dates on which permits for these structures were granted, or whether other factors, such as the composition of the city council or the related zoning ordinances had changed since the prior permits were granted"). Moreover, Plaintiffs concede that Defendants have denied two similar projects where the developers sought to place them in residential districts. Thus, Plaintiffs have not put forth sufficient evidence to create an issue of fact regarding whether Defendants granted a similarly situated party a Special Use Permit near the time Defendants denied their application for a Special Use Permit.

Even if Plaintiffs could produce sufficient evidence to create an issue of fact as to the existence of a prima facie claim for disparate treatment, a grant of summary judgement is still appropriate if Defendants can set forth a legitimate and nondiscriminatory reason for denying Plaintiffs' application for a Special Use Permit and Plaintiffs cannot prove by a preponderance of the evidence that the reasons asserted by Defendants are mere pretext. Gamble, 104 F.3d at 305.

Zoning concerns are legitimate governmental goals and permit denials are rationally related to achieving zoning goals. Id. at 307 (citing Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365, 386-88 (1926)). Moreover, "concern for the character of the neighborhood, is legitimate and nondiscriminatory." Id. at 305.

Plaintiffs concede that the RAC as proposed did not comply with the zoning ordinances in existence when the Special Use Permit was submitted. Specifically, the RAC required a Special Use Permit because:

> (a) the casitas will be attached dwelling units rather than detached; (b) the two-story apartment building will exceed the 30 foot height limitation from adjacent existing grade...; and (c) the provision of healthcare, meal, laundry, housekeeping and similar

services constitute a special use under the zoning ordinances.[5]

Under Carefree's Zoning Ordinance § 1601(4) and (5), Plaintiff bears the burden of demonstrating, "specific evidence and facts showing that the public health, safety and general welfare will be served and not adversely affected, ... and that necessary safeguards will be provided for the protection of adjacent property or the permitted use thereof."

While the Court finds that Plaintiffs did put forth evidence that the RAC would not have an adverse affect on traffic flow or impose a burden on the water or sewer system, the Record also demonstrates that the Commission and Council were not persuaded to grant the Special Use Permit on this evidence alone, but also considered other evidence, including comments from the community.

The citizens of Carefree expressed both support for and opposition to the RAC. Those supporting the RAC stated that the project would provide Carefree with a place for its citizens to stay when they could no longer live alone and would allow its citizens to stay in Carefree forever.

Those opposing the RAC expressed concern that the RAC was a commercial facility in a residential zone, and claimed that the RAC would lower property values and negatively impact the character of their neighborhood. The Record additionally demonstrates that some of the Council Members who voted against the RAC, including the Mayor, were concerned about the issues the citizens raised. The Record also contains the following statements, which Plaintiffs argue evidence Defendants' intent to discriminate: "we should focus on all the residents of Carefree not those who were affluent and would come to die at the Residence at Carefree" and "people won't come out here to see old people living in a home; they come out here to see the desert...." (Council Meeting Minutes, p. 7, Commission Meeting Minutes p. 11).

Plaintiffs contend these negative statements, combined with evidence that the Council

---

[5] In response to the question, "Why is the property in question not reasonably suited for use permitted under the present zoning district?," Plaintiffs responded: "(1) R1-10 Attached Units vs. Detached; (2) R-3 Minor Height Restriction Variances from Max. Allowed; (3) Special use request under zoning ordinance article XVI section 1601(g); other minor special use requirement as necessary."

- 9 -

1 was concerned about the opinion of the neighbors who resided in the area where the RAC would
2 be constructed, establish that Defendants did not have a legitimate basis for denying their
3 Special Use Permit.

4 The Record contains numerous comments reflecting concern about the effect the RAC
5 would have on property values, the integrity of Carefree's zoning scheme and the character of
6 the neighborhood where it would be built.

7 Morever, Carefree's Zoning Ordinance § 1601 states: "...the Council shall hold a public
8 hearing to determine whether granting the application would serve the public health, safety, and
9 the welfare of the town." Viewing the Record in its entirety, the Court finds that the Council
10 listened to all of the evidence and public comments presented and then rejected the project by
11 a divided vote. Although the Record also contains statements from the general public that may
12 not be appropriate, the Court finds that these statements do not, in and of themselves, establish
13 any animus or bias against disabled people on the part of the Commission or the Council.
14 Furthermore, even if the Court found the public's comments were discriminatory in nature
15 (which it does not ), Plaintiffs have failed to set forth evidence that the Council or Commission
16 members were influenced by these particular statements, or that their respective decisions were
17 based on an intent or motive to discriminate.

18 Accordingly, the Court finds that Defendants have presented sufficient evidence to meet
19 their burden of establishing the denial of the Special Use Permit was based on concern for the
20 character of the neighborhood and to uphold Carefree's zoning ordinances, both of which are
21 legitimate and nondiscriminatory reasons. Moreover, Plaintiffs fail to create a genuine issue
22 of fact as to whether Defendants' actions were pretextual, or the Commission and Council based
23 their decisions on discriminatory motives. Thus, Plaintiffs' disparate treatment claim fails.

24 *b. Disparate Impact*

25 To establish a prima facie disparate impact case, Plaintiffs must establish: 1) the
26 occurrence of certain outwardly neutral practices and 2) a significantly adverse or
27 disproportionate impact on persons of a particular type produced by Defendants' facially neutral
28 acts or practices. Gamble, 104 F.3d at 306. Plaintiffs need not prove intent but Plaintiffs must

1 prove the discriminatory impact at issue; raising an inference of discriminatory impact is
2 insufficient. Id.

3 In Gamble, the Ninth Circuit found that the plaintiff failed to establish a prima facie case
4 because he presented no statistics or other proof demonstrating that the city's permit practices
5 had a significantly adverse or disproportionate impact on the physically disabled or elderly. Id.

6 Here, Plaintiffs have likewise failed to set forth statistics that indicate Defendants' permit
7 practices have a significantly adverse or disproportionate impact on the disabled or elderly.
8 Rather, Plaintiffs rely on Carefree's denial of two prior special use permits where the developers
9 sought to place assisted living and skilled nursing facilities in residential zoning districts and
10 argue that lack of these facilities results in a disproportionate impact on residential housing
11 available for the physically disabled or elderly.

12 Like the plaintiff in Gamble, Plaintiffs argue that the lack of other facilities similar to the
13 RAC is sufficient evidence of a disproportionate impact. The Ninth Circuit, however, has
14 indicated that a community void and absence of like facilities alone is not actionable. Id. at 306.
15 Morever, even if a community void was actionable, the Heritage Healthcare facility (a 64-unit
16 assisted living and skilled care facility) is currently operating in Carefree less than a mile from
17 the proposed RAC site.[6]

18 Accordingly, the Court finds that Plaintiffs failed to produce sufficient evidence to create
19 a material issue of fact as to whether the denial of the Special Use Permit had a disparate impact
20 on Carefree's disabled population. Thus, Plaintiffs' disparate impact claim fails as a matter of
21 law.

22     *c. Reasonable Accommodation*

23 The Ninth Circuit has held that a municipality commits discrimination under the FHA
24 if it refuses "to make reasonable accommodations in rules, policies, practices, or services, when

---

[6] Notably, Plaintiff Budnick concedes that Carefree initially rejected the application for a Special Use
Permit for Heritage Healthcare because the proposed site was in a residential neighborhood but subsequently
granted the Special Use Permit on July 10, 1998, after the developer agreed to re-locate Heritage Healthcare to
a mutually agreed upon site in an area zoned "Garden-Office."

- 11 -

1 such accommodations may be necessary to provide [the physically disabled] equal opportunity
2 to use and enjoy a dwelling." Gamble, 104 F.3d at 307.

3 In Gamble, the Ninth Circuit found that a plaintiff was not entitled to an accommodation
4 under the FHA because the building contained both (1) housing for fifteen disabled individuals
5 and (2) an adult healthcare facility that would be utilized by the community, because the
6 plaintiff failed to allege that the health care facility was required to house the disabled
7 individuals. Id.

8 Plaintiffs contend Gamble is distinguishable because the community healthcare facility
9 was a major facet of the proposed building in that case and here the RAC is designed solely to
10 provide housing and healthcare services to its residents. While the Court recognizes that the
11 present case is factually distinguishable because the RAC does not contain a large health care
12 facility to be utilized by the community at large, the Court finds the Ninth Circuit's rationale in
13 Gamble applicable here because the RAC's proposed amenities are analogous to the community
14 healthcare facility in Gamble.

15 The proposed RAC will contain approximately 44,000 square feet of amenities,
16 including 18,900 square feet of dining facilities, 7,100 square feet of lobbies and offices, and
17 a 1,000 square foot hair salon. Like the plaintiff in Gamble, Plaintiffs in the case *sub judice,*
18 have failed to produce any evidence suggesting that amenities of this size and magnitude are
19 required to house disabled individuals. Moreover, Plaintiffs have failed to produce evidence
20 that they requested a reasonable accommodation before either the Commission or the Council
21 reviewed and denied their application for a Special Use Permit.

22 Although the Court concludes that Plaintiffs have failed to produce evidence that
23 creates an issue of fact as to whether they are entitled to a reasonable accommodation under
24 the FHA, the Court notes that after the RAC application was denied, Plaintiffs and
25 Defendants met and discussed possible alternative sites for the RAC, possible alternative
26 locations for the commercial amenities, and the possible restructuring of the commercial
27 amenities to reduce their size. However, these discussions were not successful. The Ninth
28 Circuit has held that a city need not make a fundamental or substantial change to

1  accommodate the handicapped; only reasonable accommodation is required.  Sanghvi v.
2  City of Claremont, 328 F.3d 532, 538 (9th Cir. 2003) (finding that there was no evidence
3  from which the jury could conclude that the accommodation was required and therapeutic to
4  Alzheimer's patients and not an economic concern to plaintiffs).

5  Accordingly, the Court finds that Plaintiffs failed to put forth sufficient evidence that the
6  RAC's amenities are necessary or required to house the physically disabled.  As a result,
7  Plaintiffs' claim that Defendants failed to reasonably accommodate their request to build the
8  RAC under the FHA fails as a matter of law.

**B. ADA Claim**

To show a violation of the ADA, Plaintiffs must show: 1) they are individuals with disabilities, 2) they are otherwise qualified to participate in or receive a public benefit; 3) they were denied a public benefit and 4) such denial or discrimination was by reason of Plaintiffs' disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). The parties concede that the analysis applicable to Plaintiffs' ADA claim is similar to their FHA claim. See Coons v. Sec'y of the U.S. Dept. of the Treasury, 383 F.3d 879, 887 (9th Cir. 2004) (noting in the employment discrimination context under the ADA that once the plaintiff establishes a prima facie case, the defendant has the burden to present legitimate reasons for its actions and then the plaintiff must present evidence that a genuine issue of material fact exists as to whether the reasons promulgated by defendant are mere pretext to defeat summary judgment).

Plaintiffs allege that Defendants discriminated against them by denying and otherwise making residency at the RAC unavailable to potential residents because such potential residents may be disabled. Initially, the Court finds that Plaintiffs have produced evidence that they were qualified applicants for a special use permit and that their application was denied, thereby satisfying the second and third elements of a prima facie ADA claim.

As discussed previously, supra at 7, because the Court is required to view the evidence in the light most favorable to Plaintiffs, the Court also finds that Plaintiffs have put forth evidence that the RAC would house some disabled individuals. However, because the evidence shows that Plaintiffs presented the RAC as a housing community (with available healthcare

- 13 -

1  services) for active and independent seniors and requested an accommodation under the FHA
2  only <u>after</u> the Commission and Council denied their application, they cannot show that the
3  Commission or Council were aware that disabled persons would reside in the RAC when the
4  application was denied. Accordingly, the Court finds that while Plaintiffs have raised an issue
5  of fact as to whether disabled people would inhabit the RAC, Plaintiffs have failed to present
6  evidence that either the Commission or Council were aware of this fact when they denied
7  Plaintiffs' application for a Special Use Permit.

8  Even if Plaintiffs could produce sufficient evidence to create an issue of fact as to the
9  existence of a prima facie case under the ADA, the Court finds that Defendants have presented
10 sufficient evidence to meet their burden by establishing that the denial of the Special Use Permit
11 was based on concern for the character of the neighborhood and the integrity of Carefree's
12 zoning ordinances and Plaintiffs have failed to put forth evidence that creates an issue of fact
13 as to whether Defendants' actions were mere pretext. Accordingly, Plaintiffs have failed to
14 produce sufficient evidence to create an issue of fact on their ADA claim.

15 **C. Fourteenth Amendment Claim**

16 Plaintiffs contend that Defendants violated their right to equal protection of law
17 guaranteed by the Fourteenth Amendment by enacting zoning ordinances that arbitrarily deny
18 groups of disabled persons the same housing opportunities as groups of non-disabled persons.

19 "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause
20 of the Fourteenth Amendment a plaintiff must show that defendants acted with an intent or
21 purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Lee
22 v. City of Los Angeles</u>, 250 F.3d 669, 686-87 (9th 2001). Moreover,"[w]here the challenged
23 governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable
24 group can satisfy the intent requirement only if it tends to show that some invidious or
25 discriminatory purpose underlies the policy." <u>Id</u>. Under the Fourteenth Amendment, the
26 physically disabled are not a protected class for purposes of equal protection. <u>City of Cleburne
27 v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 446 (1985). Accordingly, rational basis scrutiny
28 is appropriate. <u>Gamble</u>, 104 F.3d at 307.

- 14 -

1    Plaintiffs have not alleged, nor have they produced any evidence indicating, that
2 Carefree's zoning ordinances discriminate against disabled individuals on their face. Thus, the
3 Court finds that the zoning ordinances at issue are facially neutral. The Court must now
4 determine whether Defendants' denial of Plaintiffs' application for a Special Use Permit was
5 rationally related to a legitimate government goal.

6    The United States Supreme Court has recognized that zoning concerns are legitimate
7 government goals. Village of Euclid, 272 U.S. at 386-88. Plaintiffs concede that the RAC, as
8 proposed, did not comply with Carefree's zoning ordinances and therefore required a Special
9 Use Permit. Accordingly, the Court finds that Defendants have a rational basis for denying the
10 Plaintiffs' application for a Special Use Permit and that Plaintiffs have failed to set forth
11 sufficient evidence to create an issue of fact as to whether Defendants acted with an "invidious
12 or discriminatory" purpose. See Lee, 250 F.3d at 686. Thus, the Court finds that even when the
13 facts are construed in the light most favorable to Plaintiffs, Plaintiffs have failed to set forth
14 sufficient evidence to create an issue of fact as to whether Defendants' conduct violated the
15 Equal Protection Clause.

16    Plaintiffs also contend that Defendants violated their right to due process of law
17 guaranteed by the Fourteenth Amendment by applying their zoning ordinances and procedural
18 regulations so as to arbitrarily and irrationally deny Plaintiffs and the RAC's potential residents
19 the residential opportunities afforded to non-disabled persons. The Court finds that rational
20 basis scrutiny is also the appropriate standard to analyze Plaintiffs' due process claim. Gamble,
21 104 F.3d at 307.

22    The Ninth Circuit has held that a threshold requirement to a substantive or procedural
23 due process claim is a showing by Plaintiffs that they have a liberty or property interest
24 protected by the Constitution. Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62
25 (9th Cir. 1994). "A protected property interest is present where an individual has a reasonable
26 expectation of entitlement deriving from 'existing rules or understandings that stem from an
27 independent source such as state law.'" Id. (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577
28 92 S.Ct. 2701, 2709 (1972)). Under Arizona law, a land developer does not have a property

- 15 -

interest in an application for a special use permit. <u>Aegis of Ariz., L.L.C., v. Town of Marana</u>, 81 P.3d 1016, 1028 (Ariz. Ct. App. 2003). Accordingly, the Court finds that Plaintiffs cannot allege that they have a liberty or property interest in the application for the Special Use Permit protected by the Constitution, nor have produced evidence of such an interest. Even if Plaintiffs had a property interest in their application for a Special Use Permit, Plaintiffs must still produce evidence that creates an issue of fact as to whether their Due Process rights were violated.

The Ninth Circuit Court of Appeals has not addressed whether the "shocks the conscience" standard applicable to other substantive due process claims also applies to a land use claim by a developer. Accordingly, the Court must look to other jurisdictions for guidance.

The Third Circuit Court of Appeals has held that the shocks the conscience standard applies in land use cases because "[a]pplication of the 'shocks the conscience' standard in this context prevents [courts] from being cast in the role of a 'zoning board of appeals'." <u>United Artists Theatre Circuit, Inc. v. Township of Warrington</u>, 316 F.3d 392, 401-02 (3rd Cir. 2003); <u>See</u> also <u>Aegis</u>, 81 P.3d 1016 at 1028 (relying on <u>United Artists Theatre</u> for the proposition that the "shocks the conscience" standard applies in land use cases in Arizona). Recognizing that every appeal from a disappointed developer based on an adverse ruling from a local planning board involves some claim that the board violated or exceeded its legal authority, the First Circuit Court of Appeals has stated, "[i]t is not enough simply to give these state law claims constitutional labels such as due process or equal protection in order to raise a substantial federal question under [section] 1983." <u>Creative Env'ts, Inc. v. Estabrook</u>, 680 F.2d 822, 833 (1st Cir. 1982). While the Court recognizes that this authority is not binding, the rationale contained in these opinions is persuasive.

To establish that Defendants' conduct shocks the conscience, Plaintiffs rely on evidence that: (1) Defendants denied similar projects, (2) Plaintiffs relied on prior indications of support by the Mayor for the project, and (3) Plaintiffs invested substantial amounts of money in the RAC. The Court finds this evidence is insufficient to create an issue of fact as to whether Defendants' conduct shocks the conscience. <u>See</u> <u>Estabrook</u>, 680 F.2d at 833 (recognizing that even where officials are planning to "clearly violate, much less 'distort' the state scheme under

which they operate" a planning dispute would not implicate the Constitution absent a "fundamental procedural irregularity" or "racial animus").

The Court notes that Defendants imposed a super-majority voting requirement at the Council meeting approximately four hours before the meeting occurred and Plaintiffs have produced evidence that a dispute exists as to whether Carefree had timely received a sufficient number of written objections from residents living within 150 feet of the project to properly impose the super-majority requirement. The Record, however, also establishes that a close legal question existed as to whether the super-majority voting requirement was required, that Defendants addressed this issue with legal counsel, and that Defendants subsequently relied on the advice they received from their counsel in deciding to implement the super-majority voting requirement. Accordingly, the Court finds that Defendants' reliance on legal counsel's advice, even if Plaintiffs had established that the advice was wrong (which they have not), is not behavior that "shocks the conscience."[7] Thus, Plaintiffs have failed to produce sufficient evidence to create an issue of fact as to whether Defendants' conduct violated the due process clause of the Fourteenth Amendment, in addition to failing to produce evidence that Plaintiffs possessed a protected property right.

**D. Rehabilitation Act Claim**

Plaintiffs allege that Defendants utilized Carefree's zoning ordinances and methods of enforcing those codes to subject Plaintiffs and the RAC's future residents to discrimination solely on the basis of the future residents' disabilities.

To successfully assert a claim under the Rehabilitation Act, Plaintiffs must prove: 1) the plaintiff is a handicapped person under the Act; 2) the plaintiff is "otherwise qualified" for participation in the program; 3) the plaintiff is being excluded from participation in, being denied benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and 4) the relevant program or activity is receiving federal financial assistance.

---

[7] The Court also finds that the implication of the super-majority requirement was not outcome determinative as Plaintiffs failed to get the four votes that are needed to constitute an ordinary majority.

- 17 -

Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1180-81 (6th Cir. 1993); Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1384 (10th Cir. 1984).

Plaintiffs concede that they cannot identify the specific program that receives federal funds, and the Court finds that they have not presented any evidence that Carefree does in fact receive federal funds. Instead, Plaintiffs attempt to rely on a conclusory assertion based upon "information and belief." This assertion fails because the Mayor's affidavit clearly states that Carefree receives no grants of federal funds from the United States Government.

Accordingly, the Court finds that Plaintiffs have failed to set forth sufficient evidence to create an issue of fact as to whether Defendants have violated the Rehabilitation Act.

**E. 42 U.S.C. § 1983 Claim**

Plaintiffs also allege that Defendants have violated their civil rights under § 1983 by utilizing their zoning ordinances and methods of administering the ordinances for purposes of subjecting the Plaintiffs and the RAC's residents to discrimination on the basis of their disability and denying Plaintiffs and the RAC's potential residents their equal protection and due process rights under the Fourteenth Amendment.

"[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Paratt v. Taylor, 451 U.S. 527, 535 (1981).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in protected class." Lee, 250 F.3d at 686-87. "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." Id.

Plaintiffs concede that because the RAC, as proposed, did not comply with Carefree's

- 18 -

1 zoning ordinances they were required to apply for a special use permit.  The Court finds that
2 Defendants held two public meetings, and that both the Commission and Counsel reviewed
3 Plaintiffs' application before denying it based on concerns for the welfare of the neighborhood
4 and its concern for the integrity of Carefree's zoning ordinances.  The Court also finds that
5 Plaintiffs have failed to set forth sufficient evidence that Defendants acted with an "invidious
6 or discriminatory" purpose. Id. at 686.

7 Plaintiffs also allege that Defendants have deprived them of their due process rights
8 under the Fourteenth Amendment in violation of § 1983.  In the Ninth Circuit, "[a] threshold
9 requirement to a substantive or procedural due process claim is the plaintiffs' showing of a
10 liberty or property interest protected by the Constitution."  Wedges/Ledges, 24 F.3d at 62.

11 Plaintiffs concede, and Arizona law confirms, that they do not have a property or liberty
12 interest in their application for a special use permit.  Aegis, 81 P.3d at 1028.  The Court has also
13 found that Plaintiffs failed to set forth sufficient evidence to create an issue of fact as to whether
14 Defendants' conduct shocks the conscience.  Supra at 17.  Accordingly, the Court finds that
15 Plaintiffs also failed to set forth sufficient facts to create an issue of fact regarding their § 1983
16 claim for a violation of due process.

17 Having found that Plaintiffs have failed to put forth sufficient evidence to create an issue
18 of fact as to their FHA, ADA, and Rehabilitation Act claims, the Court also finds that Plaintiffs
19 have failed to produce sufficient evidence to create an issue of fact as to whether  Defendants'
20 conduct has deprived them of their rights, privileges or immunities secured by the Constitution
21 or laws of the United States.  Thus, Plaintiffs' § 1983 claim fails as a matter of law.  **III.**
22 **MOTION TO STRIKE**

23 Defendants have filed a Motion to Strike Paul Gordon's Affidavit. Having found that
24 Defendants' Motion for Summary Judgment should be granted, the Court also finds that
25 Defendants' Motion to Strike is moot and will refrain from addressing it at this time.

**CONCLUSION**

Plaintiffs admit that the RAC, as proposed, did not comply with Carefree's zoning ordinances as they existed when their application for a Special Use Permit was filed. The Record establishes that Plaintiffs marketed the RAC as a community for active and independent seniors and that the first mention of accommodating disabled individuals occurred almost one month after Defendants denied their Special Use Permit. The Court concludes that the denial of Plaintiffs' Special Use Permit was based on valid and non-discriminatory reasons; thus Plaintiffs' attempts to transform it into a discriminatory and malfeasant act fail as a matter of law.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend and Correct Complaint [Doc. No. 44] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 18] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [Doc. No. 31] is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in accordance with this Order.

DATED this 31st day of March, 2006.

Stephen M. McNamee
Chief United States District Judge